```
 1              IN THE UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF TENNESSEE
 2                     NASHVILLE DIVISION

 3
      UNITED STATES OF AMERICA        )
 4                                    )
                                      )
 5        v.                          ) 3:22-cr-00078-1
                                      ) JUDGE RICHARDSON
 6                                    )
      ROBIN SMITH                     )
 7                                    )
                                      )
 8    -----------------------------------------------------------

 9

10

11

12

13

           BEFORE THE HONORABLE ELI J. RICHARDSON, DISTRICT JUDGE
14

15                    TRANSCRIPT OF PROCEEDINGS
                             PLEA HEARING
16

17                         March 8, 2022

18

19

20

21

22    -----------------------------------------------------------

23    DEBORAH K. WATSON, RPR, CRR
      Official Court Reporter
24    713 Church Street, Suite 2300
      Nashville, TN 37203
25    debbie_watson@tnmd.uscourts.gov
```

```
 1   APPEARANCES:

 2

 3   For the Government:

 4               AMANDA J. KLOPF, former AUSA
             U.S. Attorney's Office
 5               719 Church Street
                Suite 3300
 6               Nashville, TN 37203
             (615) 736-5151
 7               E-mail: USATNM.ECFUnassigned@usa.doj.gov

 8               JOHN P. TADDEI
             U.S. Department of Justice
 9               Public Integrity Section
             1301 New York Ave. NW
10                Suite 10th Floor
             Washington, D.C. 20530
11               (202) 514-1412
             E-mail: john.taddei@usdoj.gov

12

13   For the Defendant:

14               WILLIAM DAVID BRIDGERS
             Holland & Knight
15               511 Union Street
                Suite 2700
16               Nashville, TN 37219
             (615) 850-8874
17               E-mail: david.bridgers@hklaw.com

18               BENJAMIN M. ROSE
             RoseFirm, PLLC
19               P.O. Box 1108
             Brentwood, TN 37024
20               (615) 942-8295
             E-mail: ben@rosefirm.com

21

22               L. WELLS TROMPETER
             Holland & Knight LLP
             511 Union Street
23                Suite 2700
             Nashville, TN 37219
24               (615) 850-8759
             E-mail: wells.trompeter@hklaw.com

25
```

1              *   *   *

2              The above-styled cause came on to be heard at

3    4:46 p.m. on March 8, 2022, before the Honorable Eli J.

4    Richardson, District Judge, when the following proceedings

5    were had, to-wit:

6

7              THE COURT:  We are here this afternoon in the

8    matter of *United States v. Robin Smith*.  The case number is

9    3:22-cr-78.  We're here to consider a petition to enter a

10   plea of guilty pursuant to a plea agreement between the

11   defendant, Ms. Smith, and the government.

12             If counsel could make their appearances, please.

13             MS. KLOPF:  Good afternoon, Your Honor.  Amanda

14   Klopf on behalf of the United States, and present with my

15   colleague, John Taddei.  He is a trial attorney from the

16   public integrity network.

17             THE COURT:  All right.  Very --

18             MR. TADDEI:  Pubic Integrity office.

19             MS. KLOPF:  I'm sorry.  Public Integrity office.

20             THE COURT:  Public Integrity Section.  Yep.

21             All right.  Good afternoon, counsel.

22             MR. BRIDGERS:  Good afternoon, Your Honor.  David

23   Bridgers on behalf of Robin Smith.  I'm joined by Wells

24   Trompeter, also from my firm, and Ben Rose.

25             THE COURT:  All right.  Good afternoon, counsel.

1  Good afternoon, Mr. Bridgers.

2         Mr. Bridgers, if Ms. Smith has not yet executed

3  the plea petition and plea agreement, she may do so at this

4  time.

5         **MR. BRIDGERS:**  She will do so.

6         (Respite.)

7         **THE COURT:**  All right.  If we look at the plea

8  agreement, it appears to have the required signatures.  And

9  the plea petition, which is our shorthand term for the

10 petition to enter a plea of guilty, appears to have the

11 required signatures as well, so we're prepared to proceed.

12        I did have a couple of preliminary questions for

13 the attorneys.  Ms. Klopf, Mr. Bridgers, one thing I noted

14 in the government's statement of the elements, it looks like

15 the government has been careful to make sure that the first

16 element is consistent with the U.S. Supreme Court decision

17 from 2010, *Skilling v. United States*.  I think that's why it

18 was written that way.

19        Are you satisfied, Mr. Bridgers, that the

20 statement of that element, as properly limited, based on the

21 *Skilling* decision, is accurate?

22        **MR. BRIDGERS:**  Yes, Your Honor.

23        **THE COURT:**  Okay.  All right.  Very well.  I

24 assume that's why you wrote it that way.

25        Fair to say, Ms. Klopf?

1      **MS. KLOPF:**  Yes, Your Honor.

2      **THE COURT:**  All right.  Well, that's important to

3  do that, and we want to acknowledge that the statement of

4  the elements incorporates the holding in *Skilling*.

5      The second thing I did want to ask counsel was

6  this:  The extent to which the part of the plea agreement

7  that would be found beginning at page 13, any reason not to

8  discuss that?

9      **MR. BRIDGERS:**  Your Honor, I'm sorry.  I didn't

10  catch your question.  Any reason --

11      **THE COURT:**  Any reason not to discuss the part of

12  the plea agreement?  You know how we discuss some parts of

13  the plea agreement and others, we don't necessarily at a

14  plea hearing?  Page 13.

15      **MR. BRIDGERS:**  Okay.  Yeah.

16      **THE COURT:**  Any reason not to?

17      **MS. KLOPF:**  No, Your Honor.

18      **THE COURT:**  Okay.

19      **MS. KLOPF:**  Not from the perspective of the

20  United States.

21      **MR. BRIDGERS:**  And not from Ms. Smith's

22  perspective.

23      **THE COURT:**  All right.  Very well.

24      So, Ms. Smith, as the Judge assigned to this

25  case, it is my duty to determine whether to accept your

1    request to plead guilty in this case.  And in order to

2    accept that request, I need to determine that you are

3    offering to plead guilty knowingly, voluntarily, and

4    intelligently.  In order to do that, I need to ask you

5    questions about a variety of topics.

6              And many of the topics, I suspect won't be new to

7    you.  You'll be familiar with them from studying for your

8    own case and from discussions with your attorneys, but some

9    of the things, I need to take from the beginning anyway as

10   if it was new to you.

11             It's important for you to realize that your

12   answers will be given under oath, which makes it especially

13   important for you to answer the questions to your best

14   truthful knowledge and recollection, because if it was later

15   alleged that you had knowingly given me a false answer, that

16   could be grounds for an additional charge of false statement

17   or perjury.

18             Does that make sense?

19             **THE DEFENDANT:**  Yes, Your Honor.

20             **THE COURT:**  All right.  You also have the right

21   to remain silent, and this, of course, is an important right

22   for you to have, and that means many different things.

23   Among other things, it means that you could decline to plead

24   guilty today.  You could decline to answer any questions

25   from me today.  Instead, you could, if you wanted to, even

1   though we've all gathered here, you could call off the plea

2   hearing, stand on your right to remain silent, and continue

3   under your current plea of not guilty and head towards

4   trial.  You could still do that.

5           Do you understand that?

6           **THE DEFENDANT:**  Yes, Your Honor.

7           **THE COURT:**  All right.  Knowing these things, do

8   you still wish to offer a plea of guilty here today?

9           **THE DEFENDANT:**  I do, Your Honor.

10          **THE COURT:**  All right.  If we could have

11  Ms. Smith placed under oath, please.

12          (The defendant was sworn.)

13          **THE COURT:**  All right.  Ms. Smith, if you could

14  please tell us your full name.

15          **THE DEFENDANT:**  Robin Danette Tucker Smith.

16          **THE COURT:**  All right.  And how old are you?

17          **THE DEFENDANT:**  I am 58 years of age.

18          **THE COURT:**  And how far did you go in school?

19          **THE DEFENDANT:**  I was a Bachelor of Science in

20  Nursing, and I did extended distance learning in 2008 for a

21  certified -- certification in project management.

22          **THE COURT:**  And you are previously a member of

23  the Tennessee General Assembly; is that correct?

24          **THE DEFENDANT:**  That is correct, Your Honor.

25          **THE COURT:**  Fair to say in that capacity, you've

1  had the occasion to review really countless documents that

2  are of a legal nature?

3          **THE DEFENDANT:**  That is correct, Your Honor.

4          **THE COURT:**  All right.  Thank you.

5          I'm going to begin by going over the charge

6  against you in this case.  And the charge is contained in a

7  document called an information, and the information is a

8  document where you have waived the right to be charged by a

9  Grand Jury indictment.  The charge is brought with your

10 consent by the United States Attorney.

11         And in this case, the information charges you

12 with just a single count, which is what is known in legal

13 circles as Honest Services Wire Fraud, which is to say fraud

14 by wire where the fraud relates to the public's right to

15 receive honest services.

16         The allegation is that the conduct alleged in the

17 information is in violation of Title 18, United States Code,

18 Section 1343, which is the general wire fraud statute, and

19 also Title 18, United States Code, Section 1346, which

20 contains Congress's essentially clarification that a scheme

21 to defraud includes a scheme to defraud basically the public

22 out of their right to honest services.

23         Have you been able to receive the information and

24 read it line for line and word for word?

25         **THE DEFENDANT:**  I have, Your Honor.

1      THE COURT:  Have you been able to discuss it to

2  your full satisfaction with your attorneys?

3      THE DEFENDANT:  Yes, Your Honor, I have.

4      THE COURT:  All right.  Any questions about this

5  document?

6      THE DEFENDANT:  No, sir.  No, Your Honor.

7      THE COURT:  All right.  I wanted to note that as

8  you would have seen in reading it, that towards the end,

9  there's something known as a forfeiture allegation.  And the

10  forfeiture allegation is a place in the indictment where the

11  government claims the right to take away your interest in

12  certain property that is connected in legally sufficient

13  ways with the crime that's been charged.

14      So in this forfeiture allegation, the government

15  notes that it is claiming the right to take away your

16  interest by forfeiture to property associated with this

17  alleged crime.

18      Any questions about the forfeiture allegation?

19      THE DEFENDANT:  No, Your Honor.

20      THE COURT:  All right.  Then let's talk next

21  about the elements of the offense and the maximum possible

22  penalties.

23      An element of an offense is simply something that

24  the government must prove beyond a reasonable doubt for you

25  to be found guilty of the offense.

1    In this case, we have an alleged crime that has

2 four different elements.  They are as follows:  First, that

3 you knowingly devised or participated in a scheme to defraud

4 the public out of its right to the honest services of you as

5 the public official through bribery or kickbacks.  It's not

6 a crime unless the offense involved bribery or the receipt

7 or giving of kickbacks.

8    The second element is that you did so knowingly

9 and with the intent to defraud.

10    Third, the scheme or artifice to defraud must

11 have involved a material misrepresentation or a false

12 statement or a false pretense or concealment of a material

13 fact.

14    And finally, the government would have to show

15 that in advancing or furthering or carrying out the scheme

16 to defraud, you, in some way, transmitted or caused to be

17 transmitted any writing, signal, or sound by means of a wire

18 communication in interstate or foreign commerce, typically

19 meaning that the writing signal or sound crossed state

20 lines.

21    Any questions about the elements of this charged

22 offense?

23    **THE DEFENDANT:**  No, Your Honor.

24    **THE COURT:**  All right.  Let's talk about the

25 maximum possible penalties.  There is a maximum prison term

1    of 20 years with no minimum mandatory sentence.  There is a

2    special assessment of $100, which means simply an order to

3    pay $100 into court.  There is a maximum fine of $250,000,

4    and there is a maximum term of supervised release of three

5    years.

6              Also, I had mentioned the possibility of

7    forfeiture as a result of a conviction for this offense.

8              Any questions about the maximum possible

9    penalties?

10             THE DEFENDANT:  No, Your Honor.

11             THE COURT:  All right.  Have you been able to

12   discuss the elements of the offense and the maximum possible

13   penalties with your attorneys to your full satisfaction?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Have you been able to discuss with

16   them any possible defenses you might have to this charge?

17             THE DEFENDANT:  I have, Your Honor.

18             THE COURT:  All right.  Are you satisfied with

19   counsel's representation of you?

20             THE DEFENDANT:  I am, Your Honor.

21             THE COURT:  Any complaints at all about the

22   representation?

23             THE DEFENDANT:  No, Your Honor.

24             THE COURT:  All right.  Let's talk a little bit

25   more about supervised release.  I had mentioned the maximum

1  term of supervised release.  A term of supervised release is

2  a period of time during which your activities, after release

3  from any term of incarceration, would be supervised, to some

4  extent, by the United States Probation Office.

5        So the way it works is that if you are given a

6  term of supervised release, you would need to comply with

7  various conditions of supervised release for that period,

8  and if you were to violate a condition of supervised

9  release, you could be subject to additional sanctions,

10  including an additional term of incarceration.  And so if

11  you do get a term of supervised release, it would be

12  important to comply with all conditions of supervised

13  release.

14        We don't know at this juncture what terms of

15  supervised release might look like.  If there was to be a

16  term, that would be something to be determined by me at

17  sentencing.

18        Any questions about supervised release?

19        **THE DEFENDANT:**  No, Your Honor.

20        **THE COURT:**  All right.  I had mentioned the

21  maximum fine.  The Court would impose a fine in at least

22  some amount unless it was determined you're financially

23  unable to pay a fine, in which case the Court would not

24  impose a fine.

25        If anyone has lost any money or property as a

1    result of your conduct, you can or perhaps would be required

2    to be ordered to pay restitution.

3           I had also mentioned the possibility, of course,

4    of forfeiture.  It's important to note that it is possible

5    that forfeiture can be ordered in addition to restitution,

6    and we may talk a little bit more about how those two work

7    together later.

8           Any questions so far?

9           **THE DEFENDANT:**  No, Your Honor.

10          **THE COURT:**  All right.  Couple of final

11   consequences that you need to know of conviction by guilty

12   plea.  If you are convicted of a felony offense, meaning an

13   offense punishable by more than one year in prison, in

14   Tennessee, that typically would deprive you of the right to

15   vote and the right to possess a firearm unless and until

16   such rights would be restored.

17          Any questions about that?

18          **THE DEFENDANT:**  No, Your Honor.

19          **THE COURT:**  All right.  Let's talk about the

20   sentencing process we would follow if I accept your plea of

21   guilty here today.  We would schedule a sentencing hearing,

22   and prior to the sentencing hearing, the United States

23   Probation Office would prepare something called a

24   Presentence Investigation Report, known as a PSR for short.

25          The PSR would contain information about you as an

1　　individual, about any prior criminal history you have, if

2　　you happen to have any.  It would also contain information

3　　about you -- in addition, information about you as an

4　　individual.  It would have information about the offense

5　　conduct in which you engaged.

6　　　　　　　So all this would be in the PSR.

7　　　　　　　Additionally, the PSR would contain the probation

8　　officer's opinion about what the guideline ranges are in

9　　your case under the United States sentencing guidelines.

10　　　　　　　Have you been able to speak with your attorneys

11　　about the sentencing guidelines?

12　　　　　　　**THE DEFENDANT:**  Yes, Your Honor.

13　　　　　　　**THE COURT:**  Good.  Then I can summarize just

14　　briefly how it works.  Sentencing guidelines are used to

15　　calculate three different ranges for each defendant's case.

16　　One is a range for a length of a term of supervised release,

17　　one is a range for an amount of a fine, and the range for an

18　　amount of a fine is based on your offense level which is

19　　based on the facts and circumstances surrounding your

20　　offense.

21　　　　　　　And then the third guideline range is a range for

22　　a length of a term of incarceration.  That's based on your

23　　offense level, and it's also based in part on your criminal

24　　history category, which is based on any prior criminal

25　　convictions you may have.

1    So the way the process works is the probation

2 officer, in the PSR, gives me her opinion about what the

3 guideline ranges are in your case.

4    If you disagree with that opinion, you're allowed

5 to object to that opinion before sentencing and at

6 sentencing. The government can do likewise. In making an

7 objection to the probation officer's opinion and asserting

8 what you believe the proper guideline range is, you would be

9 permitted at the sentencing hearing to present evidence and

10 argument on that topic. The government could do likewise.

11    Now, if Mr. Bridgers had given you an estimate

12 about what he thinks your guideline range would be, that

13 would be perfectly appropriate, but you do need to know that

14 that's his opinion only and that the final decision is for

15 me and me alone.

16    Are you with me so far?

17    **THE DEFENDANT:** Yes, Your Honor, I am.

18    **THE COURT:** Very well. All right. The guideline

19 ranges, though, are not mandatory for the Court. The Court

20 typically could sentence above, below, or within the

21 guidelines range. And to determine what sentence to impose,

22 the Court needs to consider not only the guideline range,

23 but also various other factors and circumstances. And at a

24 sentencing hearing, you and the government both could

25 present evidence and argument about the other relevant

1    circumstances for what your sentence should be.

2           Also, if you wish to address me without

3    cross-examination before sentencing, you would be permitted,

4    at the sentencing hearing, to do so.

5           Now, if Mr. Bridgers had given you his estimate

6    about what a sentence for you could look like, that, again,

7    would be perfectly appropriate, but you do need to know,

8    again, that the final decision is mine and mine alone.  No

9    one here knows what the sentence would be because we have to

10   go through the process first.

11          Does that make sense?

12          **THE DEFENDANT:**  It does, Your Honor.  Thank you.

13          **THE COURT:**  Any questions at all about any of

14   that?

15          **THE DEFENDANT:**  No questions, Your Honor.

16          **THE COURT:**  All right.  Now, I wanted to note

17   that if you did receive a sentence of incarceration, you

18   would need to serve all time imposed minus a maximum of

19   15 percent off as credit for good time served.

20          Does that make sense?

21          **THE DEFENDANT:**  It does, Your Honor.

22          **THE COURT:**  All right.  You need to know also

23   that the grounds for withdrawing a guilty plea in federal

24   court are pretty limited, so you would not be able to

25   withdraw your guilty plea later just because you change your

1 mind.  Let's say you decide some day that maybe you weren't

2 guilty after all or you don't like the sentence you got.

3 Those things alone would not be grounds for withdrawing a

4 plea of guilty.

5          Does that make sense?

6          **THE DEFENDANT:**  I understand, Your Honor.

7          **THE COURT:**  All right.  Thank you.

8          All right.  Mr. Bridgers, do I understand

9 correctly that Ms. Smith is not on parole, probation, or

10 supervised release from any offense in any court?

11          **MR. BRIDGERS:**  You do understand that correctly,

12 Your Honor.

13          **THE COURT:**  I thought so.  Appreciate the

14 confirmation.

15          I want to then move to our next topic, which is

16 the rights that you would be giving up, Ms. Smith, if I was

17 to accept your plea of guilty here today.

18          And have you been able to speak with Mr. Bridgers

19 and other counsel as appropriate about your rights at trial

20 if you were to exercise your right to trial?

21          **THE DEFENDANT:**  I have, Your Honor.

22          **THE COURT:**  Good.  Then I'll run through them

23 briefly here.

24          You have the right to continue in your current

25 plea of not guilty and to persist in that plea of guilty and

head towards a speedy and public trial before a jury of your peers.

At this trial, you would be afforded the presumption of innocence, meaning you could not be found guilty of this charge unless and until the government proved your guilt beyond a reasonable doubt by proving each of the elements I mentioned beyond a reasonable doubt.

You have the right to be represented by counsel at trial throughout the trial, and also on any appeal if there was to be an appeal.  And for any period of time in which it turns out you cannot afford your own counsel, you would be able to have court-appointed counsel paid for at public expense.

At this trial, you would have the right to confront and cross-examine government witnesses against you. You would also have the right, if you wish, to present evidence in your own defense.  This includes the right to testify on your own behalf.  You have an absolute right to do that.  On the other hand, you have an absolute right not to testify, because you have the right to remain silent and not incriminate yourself unless and until you give up that right.

Now, if you were to plead guilty here today, though, you'd be waiving these rights because there would be no trial to determine whether or not you're guilty.

1    Instead, you'd be found guilty just because of your guilty

2    plea, and we'd head towards sentencing and follow that

3    process that I had mentioned.

4            Does that make sense?

5            **THE DEFENDANT:**  It does, Your Honor.

6            **THE COURT:**  Any questions at all about your

7    rights?

8            **THE DEFENDANT:**  No questions, Your Honor.

9            **THE COURT:**  Have you been able to speak with them

10   really to your full satisfaction with Mr. Bridgers?

11           **THE DEFENDANT:**  I have, Your Honor.

12           **THE COURT:**  Okay.  Now, we've talked about

13   several different things already.  We've talked about the

14   nature of the charge and the elements of the offense.  We've

15   talked about the maximum possible penalties.  We've talked

16   about some other consequences or possible consequences of

17   conviction.  And we've talked about the rights that you

18   would be giving up if I was to accept your plea of guilty

19   here today.

20           Having discussed these things, do you still wish

21   to offer a plea of guilty?

22           **THE DEFENDANT:**  I do, Your Honor.

23           **THE COURT:**  All right.  And that's what your plea

24   petition, in fact, tells me.  It says that you do wish to

25   plead guilty, and I'm reading from paragraph 12, and that

1  you do have a plea agreement with the government.  That's
2  what paragraph 13 says.

3          Is that your understanding?

4          **THE DEFENDANT:**  It is my understanding, Your
5  Honor.

6          **THE COURT:**  All right.  This plea petition that
7  you signed and this plea agreement that you signed, have you
8  read each of these line for line, word for word?

9          **THE DEFENDANT:**  I have, Your Honor.

10          **THE COURT:**  Have you been able to discuss them
11  with Mr. Bridgers to your full satisfaction?

12          **THE DEFENDANT:**  Yes, Your Honor, I have.

13          **THE COURT:**  Any questions about either of those
14  documents?

15          **THE DEFENDANT:**  No questions, Your Honor.

16          **THE COURT:**  All right.  Then I don't need to
17  review everything, but there are some things that we need to
18  go over.  And if you have a copy of it in front of you, I'd
19  direct your attention to page 11, paragraph 9.  And it's a
20  part of the plea agreement that says sentencing guidelines
21  calculations.

22          Do you recall this language?

23          **THE DEFENDANT:**  I do, Your Honor.

24          **THE COURT:**  And there are a variety of figures in
25  there, and I wanted to ask you:  Do you feel, based on

1 reading this and discussing it with Mr. Bridgers, that you

2 understand what those figures mean and where they came from?

3          THE DEFENDANT: Yes, Your Honor. We've discussed

4 those.

5          THE COURT: All right. And do you realize that

6 the parties are agreed on some parts of the guidelines

7 calculations, but they reserve the right to disagree with

8 each other about other parts of the guidelines calculations?

9          THE DEFENDANT: I understand, Your Honor.

10          THE COURT: All right. And do you understand

11 that ultimately, it's the Court that makes the final

12 decision about the guidelines calculations? Does that make

13 sense?

14          THE DEFENDANT: Yes, I understand, Your Honor.

15          THE COURT: All right. Now, we talked about the

16 way the Court has to calculate a guidelines range and take

17 it into account. Under certain circumstances, the guideline

18 range that otherwise applies could be lowered pursuant to

19 what is known as a downward departure. And the plea

20 agreement that you have contemplates the potential, but by

21 no means the certainty, of a downward departure under

22 certain circumstances.

23          Do you realize that it is a decision for the

24 Court and the Court alone whether ultimately to grant a

25 downward departure?

1        **THE DEFENDANT:**  I do, Your Honor.

2        **THE COURT:**  All right.  Very well.  Thank you.

3        Now, if we look at page 13, there is a section

4   there that talks about cooperation.  Do you have any

5   questions about that section?

6        **THE DEFENDANT:**  I have no questions, Your Honor.

7        **THE COURT:**  All right.  Would it be fair to say

8   that this language imposes certain obligations on you

9   towards the government, and also imposes on the government,

10  at least conditionally, certain obligations towards you?  Do

11  you understand that?

12       **THE DEFENDANT:**  That is my understanding, Your

13  Honor.

14       **THE COURT:**  And do you feel like you understand

15  those obligations?

16       **THE DEFENDANT:**  I do understand those, Your

17  Honor.

18       **THE COURT:**  All right.  And I wanted to direct

19  your attention to paragraph 17.  Do you see where it notes

20  that the government would have the sole discretion to decide

21  whether to file a motion on your behalf ultimately under

22  United States sentencing guidelines, Section 5K1.1?

23       **THE DEFENDANT:**  I've seen that and I agree, Your

24  Honor.

25       **THE COURT:**  All right.  And do you see in

1  paragraph 18 where it says that each party is free to

2  recommend whatever sentence it feels is appropriate?  Do you

3  understand that?

4              **THE DEFENDANT:**  I see and understand that, yes,

5  sir.

6              **THE COURT:**  All right.  Thank you.

7              Now, turning to the next page, forfeiture of

8  property, do you understand that the government intends,

9  under this language, to move for a consent order of

10  forfeiture, and that is an order with your consent for a

11  forfeiture in the form of a money judgment?  Do you

12  understand that?

13             **THE DEFENDANT:**  I understand that, Your Honor.

14             **THE COURT:**  Now, I'm not seeing anything here,

15  Mr. Bridgers, that indicates what the amount of the

16  forfeiture money judgment would be.  Is that to be

17  determined?

18             **MR. BRIDGERS:**  That is to be determined, Your

19  Honor.  You're correct.  There is no number in there.

20             **THE COURT:**  Do the parties believe that the

21  amount could be left open to the Court; in other words, that

22  Ms. Smith doesn't have to accept any figure the government

23  requests?  Is that fair to say?

24             **MS. KLOPF:**  That could happen, Your Honor.  I'll

25  represent we will, later on down the road, reach an

1  agreed-upon number, but at this point, it could be left

2  open.

3          THE COURT:  Thank you.  And the reason I ask, the

4  language, "The United States will move for entry of a

5  consent order of forfeiture consisting of a money judgment."

6  And I figured that you probably didn't mean that to mean

7  that the United States is obligating Ms. Smith to consent to

8  an order with whatever figure that they have.

9          So I think it sounds like we're on the same page.

10 The United States intends to pursue a forfeiture.  It's

11 going to seek a preliminary order of forfeiture and then a

12 final order of forfeiture.  But everyone understands that

13 the amount of any forfeiture order, if any, is to be

14 determined.  Fair to say?

15         MS. KLOPF:  Yes, Your Honor.

16         MR. BRIDGERS:  Fair to say from our side.

17         THE COURT:  Okay.  All right.

18         Now, there is also the possibility of restitution

19 to any victims of the offense, Ms. Smith, that we had

20 discussed.  Paragraph 31 talks about sort of the interplay

21 between an order of forfeiture and a restitution order.

22         And as I read this language, it notes correctly

23 that you actually could be required to pay both forfeiture

24 and restitution even though someone could say, well, it

25 looks like it's for the same loss.  It's a double recovery

or double punishment.  Under the law, for reasons we need to not get into, that is possible.

I read this language for the government to say something like this:  Look, if we recover money from you under a forfeiture order, Ms. Smith, we'll make every effort to pay it over to victims to satisfy the restitution order and, you know, thereby lower your restitution order.  But we, as the government, can't guarantee that.

That's what that language is telling me.  Is that what it means to you?

**THE DEFENDANT:**  I understand that, Your Honor.

**THE COURT:**  Is that your take on that language, Mr. Bridgers?

**MR. BRIDGERS:**  That is our take on that language, Your Honor.

**THE COURT:**  All right.  You, too, Ms. Klopf?

**MS. KLOPF:**  Yes, Your Honor.

**THE COURT:**  All right.  Thank you.

All right.  Final provision, the waiver of appellate rights.  Paragraph 37 has language in there that seems to be written more for lawyers, I think, or perhaps legislators, than for regular folks.  And I tell defendants this every time, and that it's perfectly appropriate:  Sometimes lawyers have to write it that way.  But there's -- you know, it would be fair to say there's something -- some

1  language in there that's like jargon and legalese, not

2  inappropriate, but it can be hard to understand.

3  So I want to ask you:  Having read this language

4  and discussed it with your attorneys, do you feel like you

5  understand what it is saying?

6  **THE DEFENDANT:**  I do, Your Honor.

7  **THE COURT:**  Okay.  Good.  Then I can just

8  summarize it briefly.

9  Here's the general idea:  If someone's convicted

10 in federal court and then gets sentenced, they generally

11 have the right to challenge their conviction and challenge

12 their sentence.

13 And they can do it one of two ways:  One is by an

14 appeal from this Court to a higher Court.  This case would

15 be the U.S. Court of Appeals for the Sixth Circuit.  And

16 your second option would be later on, to file certain kinds

17 of motions challenging a conviction or a sentence or both in

18 this court.

19 Experience shows, however, that as part of plea

20 bargains, sometimes defendants give up some of these rights.

21 This language is telling me that you're giving up a lot of

22 your rights to make these kinds of challenges -- not all of

23 your rights, but a lot of them, while preserving certain

24 rights to make a challenge to your conviction or your

25 sentence.  That's what it's telling me.

1          Does that make sense to you?

2          **THE DEFENDANT:**  It does, Your Honor.

3          **THE COURT:**  All right.  And, Mr. Bridgers, do you

4   believe that you've covered this language adequately with

5   Ms. Smith?

6          **MR. BRIDGERS:**  Yes, we do, Your Honor.

7          **THE COURT:**  Very well.  All right.

8          We can set aside the plea agreement, and I'm

9   going to then ask about voluntariness.  If you offer to

10  plead guilty, Ms. Smith, it should be your own personal

11  choice to do so.  So I'm going to ask you:  Has anyone put

12  any force or pressure or threats on you in an attempt to get

13  you to plead guilty?

14         **THE DEFENDANT:**  None of the above.

15         **THE COURT:**  All right.  Other than what is in

16  your written plea agreement, has anything been promised to

17  you in return for pleading guilty?

18         **THE DEFENDANT:**  No other promises, Your Honor.

19         **THE COURT:**  All right.  Have you had any drugs or

20  alcohol in the last 24 hours?

21         **THE DEFENDANT:**  I have not, Your Honor.

22         **THE COURT:**  Are you taking any prescription

23  medications?

24         **THE DEFENDANT:**  I am taking for my reflux

25  medication.

```
 1                 THE COURT:  Okay.  Now, this medication, does it
 2    have any side effects that impact your ability to think
 3    clearly?
 4                 THE DEFENDANT:  It does not, Your Honor.
 5                 THE COURT:  All right.  Have you ever been
 6    treated for any mental health concerns?
 7                 THE DEFENDANT:  I have not, Your Honor.
 8                 THE COURT:  All right.  Would you say your mind
 9    is clear and you know exactly what you're doing in here
10    today?
11                 THE DEFENDANT:  I do, Your Honor.
12                 THE COURT:  And would you say that you are
13    offering to plead guilty voluntarily?
14                 THE DEFENDANT:  I am offering that voluntarily.
15                 THE COURT:  All right.  Thank you.
16                 Mr. Bridgers, Ms. Klopf, seems to me that we have
17    a detailed factual basis set forth in the plea agreement.
18    Are counsel amenable to waiving the reading as long as I
19    ascertain Ms. Smith having knowledge and agreeing with the
20    factual basis?
21                 MS. KLOPF:  Yes, Your Honor.
22                 THE COURT:  Does that work, Mr. Bridgers?
23                 MR. BRIDGERS:  Yes, Your Honor.
24                 THE COURT:  Okay.  So in the plea agreement,
25    there is a factual basis that essentially provides facts
```

1　that are intended to satisfy me that you agree to -- agree

2　that the facts of this case do, in fact, show your guilt;

3　that, you know, it's not like you're pleading guilty just

4　because; or it's not like, well, maybe the government's

5　making it up, but I gotta plead guilty anyway.  Factual

6　basis is where we establish that you agree that the -- there

7　are facts that would, in fact, show your guilt.

8　　　　　So I wanted to ask you:  The part of the plea

9　agreement labeled "Factual Basis" which goes on for a number

10　of pages, have you read that language in full?

11　　　　　**THE DEFENDANT:**  I have, Your Honor.

12　　　　　**THE COURT:**  And would you say that you've been

13　able to ask everything that you desired of your attorneys

14　about this language?

15　　　　　**THE DEFENDANT:**  I have been able to, yes, sir.

16　　　　　**THE COURT:**  Okay.  Would you agree with

17　everything that's in that language?

18　　　　　**THE DEFENDANT:**  I do, Your Honor.

19　　　　　**THE COURT:**  Okay.  Now, if there's anything at

20　all in there that you don't agree with, that's fine.  We

21　just need to talk about it.  Anything at all in there in the

22　factual basis that you disagree with?

23　　　　　**THE DEFENDANT:**  I accept the factual agreement as

24　provided, Your Honor.

25　　　　　**THE COURT:**  Okay.  With no reservations?  Is that

1  fair to say?

2            **THE DEFENDANT:**  No reservations, sir.

3            **THE COURT:**  Okay.  All right.  Are you offering

4  to plead guilty because you are, in fact, guilty of the

5  crime of honest services wire fraud that is alleged in the

6  information?

7            **THE DEFENDANT:**  Yes, Your Honor.

8            **THE COURT:**  All right.  Thank you.

9            So at this time, I want to ask counsel for each

10  side whether they are satisfied on each of the following

11  points:  First, that Ms. Smith is competent to plead guilty,

12  also that she is willing to plead guilty voluntarily, that

13  her guilty plea is based on no agreements or promises other

14  than what is in her written plea agreement;

15            That her guilty plea is being made with a full

16  understanding of the nature and elements of the charge, the

17  maximum possible penalties, other consequences and possible

18  consequences of conviction, and her legal rights to contest

19  the charge at trial;

20            That she has knowingly and voluntarily waived her

21  legal rights to contest the charge at trial; that a factual

22  basis has been established sufficient to show her guilt on

23  that charge; and that the Court has complied with the

24  provisions of Federal Rule of Criminal Procedure 11 in

25  accepting the plea of guilty.

1          Are counsel satisfied on these points?

2    Ms. Klopf?

3          **MS. KLOPF:**  Yes, Your Honor.

4          **THE COURT:**  Thank you.

5          Mr. Bridgers?

6          **MR. BRIDGERS:**  Yes, Your Honor.

7          **THE COURT:**  All right.  So, Ms. Smith, at this

8    time, I need to ask you, as to the crime charged in the

9    indictment, at this time, how do you plead:  Not guilty or

10   guilty?

11         **THE DEFENDANT:**  Guilty, Your Honor.

12         **THE COURT:**  All right.  The Court has observed

13   the appearance of the defendant, Ms. Smith, in court here

14   today, and based on the Court's observation of that and

15   based on the specific answers she has given to the Court's

16   questions, the Court makes the following findings: that the

17   defendant, Ms. Smith, is in full possession of her faculties

18   and is competent to plead guilty;

19         That she is not under the apparent influence of

20   drugs, alcohol, or prescription medications; that she

21   understands the nature and elements of the charge, the

22   maximum possible penalties, other consequences or possible

23   consequences of conviction, and her legal rights to contest

24   the charge at trial;

25         That she has knowingly and voluntarily waived her

1   legal rights to contest the charge at trial; that she is

2   aware of the terms of her plea agreement; that she has

3   offered to plead guilty knowingly, voluntarily, and

4   intelligently; and that there is a factual basis to support

5   the plea of guilt.

6           So for these reasons, the Court will accept the

7   plea of guilty.  That plea is accepted, Ms. Smith is

8   adjudged guilty of the crime charged in the information.

9           And we, therefore, need to schedule a sentencing

10  hearing.  Understanding that the government may have views

11  about when sentencing really is more -- most likely to be

12  appropriate, I will ask the government its view.  Would

13  something in about four months be appropriate and then see

14  where things stand at that point, or do you think we should

15  set it out further to begin with?

16          **MS. KLOPF:**  Your Honor, if possible, could we set

17  it out a little further?

18          **THE COURT:**  Like September?

19          **MS. KLOPF:**  September-October.  Actually, I'm

20  sorry, Mr. Taddei has a trial in September.  Could we set it

21  in October?

22          **THE COURT:**  October?  Mr. Bridgers, any

23  objection?

24          **MR. BRIDGERS:**  No objection, Your Honor.

25          **THE COURT:**  All right.  Let's see what we can get

1    in October.  And while we're working on that, I wanted to

2    ask the government its view about release pending

3    sentencing.

4            **MS. KLOPF:**  Yes, Your Honor.  We're not asking

5    for remand.

6            **THE COURT:**  And would that be based on the

7    government's assessment that Ms. Smith does not have a

8    concerning criminal history, that this is not a crime of

9    violence, and that, of course, she's only recently been on

10    bond, but certainly no violations of pretrial release?  Is

11    that's what's factored into the government's thinking?

12            **MS. KLOPF:**  Yes, Your Honor.  I think the

13    conditions that she's currently on are appropriate for her

14    to continue to remain on.

15            **THE COURT:**  Okay.  Very well.  Thank you.

16            All right.  How about, for sentencing, October

17    the 17th at 1:00 p.m.?

18            **MS. KLOPF:**  That works, Your Honor.

19            **MR. BRIDGERS:**  Works for the defense side.

20            **THE COURT:**  All right.  Very well.  Then we will

21    get out an order setting this for sentencing October

22    the 17th at 1:00 p.m.  If anyone feels the need to seek to

23    change that, by all means, don't hesitant to file a motion

24    or reach out to the courtroom deputy.

25            Ms. Smith, I do need to explain this to you.

```
 1   Even for someone that hasn't, for however long they've been
 2   on pretrial release, hasn't had any violations of conditions
 3   of release, once they plead guilty, the calculus changes and
 4   there is at least a possible presumption that the person
 5   should be detained pending sentencing.
 6           But the presumption can be overcome, and in cases
 7   like this with the factors that I had reviewed with
 8   Ms. Klopf, it's appropriate to allow you to remain on
 9   release pending sentencing.
10           I would note, however, that it does remain just
11   vital to comply with all conditions of release because no
12   one wants to see you back in court before the scheduling --
13   the scheduled sentencing date based on an alleged violation
14   of conditions of pretrial release.
15           So that means always think before you act, and if
16   you ever -- you have a question about compliance with
17   conditions of pretrial release, pick up the phone and call
18   Mr. Bridgers and get clarification.
19           Can I count on you to do those things?
20           THE DEFENDANT:  You may, Your Honor.
21           THE COURT:  All right.  Thank you.  That being
22   the case, and given the factors I had mentioned and the
23   government's lack of objection, Ms. Smith, as is appropriate
24   under these circumstances, can remain on her current
25   conditions of release.
```

1          All right.  Is there anything else we need to

2     cover at this time?  Ms. Klopf?

3               **MS. KLOPF:**  Not from the United States, Your

4     Honor.

5               **THE COURT:**  Mr. Bridgers?

6               **MR. BRIDGERS:**  Not from the defendant, Your

7     Honor.

8               **THE COURT:**  All right.  Thank you, counsel.  We

9     stand in recess.

10               (WHEREUPON, the foregoing proceedings were

11     concluded at 5:28 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    REPORTER'S CERTIFICATE

 2

 3              I, Deborah K. Watson, Official Court Reporter for

 4    the United States District Court for the Middle District of

 5    Tennessee, with offices at Nashville, do hereby certify:

 6              That I reported on the Stenograph machine the

 7    proceedings held in open court on March 8, 2022, in the

 8    matter of *UNITED STATES OF AMERICA vs. ROBIN SMITH*, Case No.

 9    3:22-cr-00078-1; that said proceedings in connection with

10    the hearing were reduced to typewritten form by me; and that

11    the foregoing transcript (pages 1 through 35) is a true and

12    accurate record of said proceedings.

13              This the 19th day of December, 2024.

14

15                                  /s/ Deborah K. Watson
                                    DEBORAH K. WATSON, RPR, CRR
16                                  Official Court Reporter

17

18

19

20

21

22

23

24

25
```